**Connie C. RESHARD and Leroy Reshard, Co–Personal Representatives of the Estate of Minnie Lee Reshard, on behalf of the Estate and Certain Survivors, Plaintiffs–Appellants,**

v.

**Dr. Earl BRITT, et al., Defendants–Appellees.**

No. 86–3641.

United States Court of Appeals, Eleventh Circuit.

March 16, 1988.

Connie Reshard, Washington, D.C., pro se.

Richard B. Collins, Collins, Dennis & Williams, Tallahassee, Fla., for Dr. Earl Britt.

Richard Smoak, Sale, Brown & Smoak, Panama City, Fla., for Dr. George Bonk.

P. Scott Mitchell, Fuller & Johnson, Tallahassee, Fla., for Dr. David Moore.

William H. Davis, Wadsworth & Davis, Tallahassee, Fla., for Tallahassee Community Hosp.

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK and EDMONDSON, Circuit Judges, and TUTTLE *, Senior Circuit Judge.

PER CURIAM:

Connie and Leroy Reshard, co-personal representatives of the Estate of Minnie Reshard, appeal a district court order disqualifying them from proceeding *pro se* in a wrongful death action brought on behalf of Minnie Reshard's estate and survivors. A panel of this Court reversed in a divided decision. *Reshard v. Britt,* 819 F.2d 1573 (11th Cir.1987). The Court took this case *in banc,* which resulted in the panel opinion being vacated. *Reshard v. Britt,* 831 F.2d 222 (11th Cir.1987).

The judges of the *in banc* court are equally divided on the proper disposition of this case. Therefore, the order of the district court is AFFIRMED as a matter of law. *See Henderson v. Fort Worth Independent School District,* 584 F.2d 115 (5th Cir.1978) (*in banc*), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979).

AFFIRMED BY OPERATION OF LAW.

TJOFLAT, Circuit Judge, dissenting in which JOHNSON and CLARK, Circuit Judges and TUTTLE, Senior Circuit Judge, join:

I.

In January 1984 Connie Reshard and Leroy Reshard (the Reshards) were appointed as personal representatives of the estate of Minnie Reshard. Acting as personal repre-

---

---

* Senior U.S. Circuit Judge Elbert P. Tuttle has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. 46(c).

sentatives, the Reshards filed a wrongful death suit in federal district court on behalf of the decedent's estate and certain of her survivors.[1] The Reshards, who are not themselves licensed attorneys,[2] sought to prosecute the wrongful death claim without the aid of an attorney.

After the parties had engaged in discovery, one of the defendants moved the district court to enter an order requiring the Reshards to obtain counsel. The Reshards argued in opposition to the motion that they had a right to proceed without counsel under 28 U.S.C. § 1654 (1982), which provides that "[i]n all courts in the United States the parties may plead and conduct their own cases personally or by counsel." The court rejected the Reshards' argument, concluding that section 1654 *required* the Reshards to obtain an attorney. The court interpreted section 1654 to prohibit a litigant from proceeding in federal court without counsel in all cases except where the litigant is seeking to prosecute his "own case[ ]." The court was of the opinion that a wrongful death action under Florida law is an action brought in a representative capacity, and that the Reshards were therefore not seeking to prosecute their "own case[ ]" within the meaning of section 1654. In accordance with this interpretation of section 1654, the court entered an order staying all further proceedings until such time as the Reshards obtained an attorney.

On appeal, a divided panel of this court reversed the district court. As a threshold matter, the panel held that the district court's order was appealable under the collateral order doctrine enunciated in *Cohen*

*v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). The panel then held that the Reshards were entitled to proceed without counsel because the wrongful death action was their "own case[ ]" within the meaning of section 1654. *Reshard v. Britt*, 819 F.2d 1573 (11th Cir. 1987).

The case was then taken in banc for reconsideration of the section 1654 issue. Since the vote of the in banc court is split equally, the district court's order requiring the Reshards to obtain counsel is affirmed by operation of law. Because I disagree with this result, I respectfully dissent. I would hold that the district court's order is reviewable by way of mandamus,[3] and would issue the writ.

## II.

Section 1654 provides in full as follows: In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

The statutory right conferred by section 1654 was originally conferred by section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92. Section 35 provided that in "all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance ... of counsel." This provision for self representation, which President Washington signed into law one day before the text of the sixth amendment was proposed, was enacted in a social climate in which "distrust of lawyers [had

---

1. The plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1332 (1982) (diversity of citizenship), and sought recovery under the Florida Wrongful Death statute, Fla.Stat. § 768.21 (1985). Section 768.20 of the Florida Statutes provides that "[t]he [wrongful death] action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act." Fla.Stat. § 768.20 (1985). The Circuit Court for Leon County, Florida appointed the Reshards as personal representatives of the decedent's estate on January 11, 1984.

2. Connie Reshard informed the district court that she is a law school graduate but is not licensed to practice law in any state.

3. Use of the writ is appropriate "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *National Developers, Inc. v. CIBA–Geigy Corp.*, 803 F.2d 616, 620 (11th Cir.1986) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). As I show in this opinion, the district court acted outside its jurisdiction when it ordered the Reshards to obtain counsel.

become] an institution." *Faretta v. California*, 422 U.S. 806, 826–27, 95 S.Ct. 2525, 2537, 45 L.Ed.2d 562 (1975) (quoting D. Boorstin, The Americans: The Colonial Experience 197 (1958)).

One could therefore view section 1654 as merely codifying the "right of self representation ... guaranteed in many colonial charters and declarations of rights." *Id.* at 828, 95 S.Ct. at 2537; *see also id.* at 828 n. 37, 95 S.Ct. at 2538 n. 37. In this case, however, the district court viewed section 1654 as doing more than that. The court took the position that section 1654, because it mentions the right of self representation only with reference to the litigant's "own case[ ]," prohibits *pro se* appearance by a litigant in any case other than his "own case[ ]."

I do not view this interpretation of section 1654 as an obviously correct one. It is not clear that section 1654 necessarily *prohibits* a litigant seeking to prosecute a case other than his "own case[ ]" from proceeding without an attorney. The statute itself contains no prohibitory language; by its terms, it merely grants a right of self representation to litigants with respect to their own cases. The concern motivating the codification of this right, it would appear, was an entrenched distrust of lawyers, *see id.* at 826–27, 95 S.Ct. at 2537, not some unarticulated concern that nonlawyers be prevented from appearing in federal court in cases other than their own.

Having said that, I am nevertheless willing to accept the proposition that section 1654 implicitly prohibits a litigant from proceeding without a lawyer in any case other than his "own case[ ]."[4] Applying that proposition in this case, however, I find it very difficult to conclude that the Reshards fall within the implicit prohibition. As noted above, the Reshards seek to recover under the Florida Wrongful Death statute. That statute provides that "[t]he action shall be brought by the decedent's personal

representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act." Fla.Stat. § 768.20 (1985). Thus, under Florida law, the personal representative is the *only* person who may bring a wrongful death action on behalf of a decedent's estate and survivors; a person proceeding merely as a survivor, for example, cannot maintain a wrongful death suit. *See Gregg v. Metropolitan Property & Liab. Ins. Co.,* 595 F.Supp. 529, 531 (S.D.Fla.1984). The Reshards, as the duly appointed personal representatives of Minnie Reshard's estate, are therefore the only persons with legal capacity to bring a wrongful death action on behalf of the estate and the survivors. If this case is not the Reshards' "own case[ ]," then whose case is it?

It has been argued that precedent precludes us from holding that this case is the Reshards' "own case[ ]." *Reshard v. Britt,* 819 F.2d 1573, 1583 (11th Cir.1987) (Roney, C.J., dissenting). Analogy has been made to cases in which courts have refused to allow corporations, partnerships, and unincorporated associations to appear in federal court in any fashion other than through an attorney. *Id.* Analogy has also been made to cases in which courts have refused to allow a putative class representative to proceed *pro se. Id.* These cases are all cited for the general proposition that the "own case[ ]" limitation precludes a nonlawyer litigant acting in any kind of representative capacity from proceeding in federal court without an attorney.[5]

Some of the cases cited are readily distinguishable. For example, some involve situations in which the litigant is seeking to pursue the interests of third parties who have the legal capacity to bring their own suits. *See, e.g., Massimo v. Henderson,* 468 F.2d 1209 (5th Cir.1972) (nonlawyer inmate may not proceed in federal court on

---

4.  I am aware that precedent supports this interpretation of section 1654. *See, e.g., National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602, 609 (11th Cir. 1984), *cert. denied,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985).

5.  Reference is also made to state court cases involving the right to proceed *pro se* in state court. I will not discuss those cases because I fail to see their relevance to the interpretation of section 1654, a federal statute granting the right to proceed *pro se* in federal court.

behalf of fellow inmates); *McShane v. United States*, 366 F.2d 286 (9th Cir.1966) (in class action, nonlawyer class member who undertook to act on behalf of other class members without their knowledge or consent could not proceed *pro se* ). In such cases, the litigant obviously is not pursuing his "own case[ ]." The present case of course involves a different set of circumstances; the Reshards are the *only* persons with legal capacity to prosecute the wrongful death suit.

The remainder of the cases cited involve situations in which a nonattorney litigant is seeking to proceed in federal court on behalf of a corporation, partnership, or unincorporated association. In such cases, it is true that courts have generally adopted the rule that a corporation or similar entity may be represented in federal court only by an attorney. A careful examination of the origins of this rule, however, reveals that it is not based on the "own case[ ]" limitation in section 1654.

Because corporations are fictional entities that can act only through their agents, courts have uniformly considered them incapable of conducting litigation "personally" within the meaning of section 1654. *See, e.g., Southwest Express Co. v. ICC*, 670 F.2d 53, 55 (5th Cir.1982) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally."). Courts have therefore determined that the right of self representation found in section 1654 simply has no application where the party in question is a corporation. *See In re Las Colinas Dev. Corp.*, 585 F.2d 7, 12 (1st Cir.1978) ("The word 'parties' [in section 1654] has been limited to individuals in an unbroken line of cases going back to at least 1840."), *cert. denied*, 440 U.S. 931, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979). Accordingly, courts in numerous cases have required that corporations proceed in federal court as they are obliged by their nature to proceed in other spheres: through their agents.

Having concluded that section 1654 conferred no rights upon corporations and that corporations had to proceed in federal court through their agents, courts found themselves confronted with an additional issue. They had to decide whether they would permit *any* corporate agent, whether he be an attorney or a nonattorney, to appear in court on the corporation's behalf. This separate issue relates not to some unarticulated policy underlying section 1654, but rather to the urgent need of the courts to be able to control the conduct of the parties before them. Proceeding from the notion that attorneys are more readily subject to court discipline, *see National Indep. Theatre, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir.1984), *cert. denied*, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985); *Southwest Express Co.*, 670 F.2d at 55, the courts developed a prophylactic rule under which corporations are required to appear through attorney rather than nonattorney agents.

That this rule is based on supervisory power and not on section 1654 is strongly suggested by the case law. *See Buena Vista Distribution Co.*, 748 F.2d at 609 ("This rule ... protects the court and the public from unscrupulous and irresponsible behavior."); *MOVE Org. v. Department of Justice*, 555 F.Supp. 684, 693 (E.D.Pa.1983) ("The purpose of this rule is the protection of the courts and the administration of justice."). The cases following the rule invariably cite *Osborn v. United States Bank*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), a case that had nothing to do with section 1654 or its predecessors.[6] Furthermore, consistent with the discretionary nature of the supervisory power doctrine, some courts have allowed departures from the rule in appropriate circumstances. *See, e.g., In re Victor Publishers, Inc.*, 545 F.2d 285, 286 n. * (1st Cir.1976); *In re Holli-*

---

**6.** In *Osborn*, the Court stated that "[a] corporation, it is true, can appear only by attorney, while a natural person may appear for himself." *Osborn*, 22 U.S. (9 Wheat.) at 829. The Court made this statement in the course of discussing whether an attorney could properly appear in court on behalf of a corporation without producing a formal warrant of authority. There is no indication in the opinion that the statement was in any way intended as an interpretation of section 1654's predecessor.

*day's Tax Serv., Inc.*, 417 F.Supp. 182, 183–85 (E.D.N.Y.1976), *aff'd*, 614 F.2d 1287 (2d Cir.1979).

Thus, the rule that a corporation must proceed through an attorney is primarily a supervisory power rule that has been specially fashioned for the specific context in which it is applied. As I have shown, the rule is not based on section 1654's "own case[ ]" limitation. It therefore seems to me quite a leap to say that the case law embracing that rule stands for the general proposition that section 1654's "own case[ ]" limitation always precludes any litigant acting in some kind of representative capacity from proceeding in federal court without an attorney.

If section 1654 does in fact preclude *pro se* litigation in all such cases, I believe that its application in this case would pose serious constitutional difficulties. In my opinion, a mechanical application of section 1654 requiring the Reshards to obtain counsel would infringe their right (as well as the right of those who stood to benefit from any recovery) of access to court. As already noted, the Reshards are the only parties with legal capacity to prosecute this wrongful death claim.

The Supreme Court has held that the right of access to court is a right of constitutional dimension. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (prisoners have a constitutional right of access to courts); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (due process prohibits denial of court access to indigents seeking judicial dissolution of their marriages); *see also Straub v. Monge*, 815 F.2d 1467, 1470 (11th Cir.) (right of access to court is not limited to presentation of constitutional and civil rights claims), *cert. denied*, —— U.S. ——, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). The theory underlying this right is based on due process: the government, "having made access to the courts an entitlement or

a necessity, ... may not deprive someone of that access unless the balance of [government] and private interests favors the government scheme." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n. 5, 102 S.Ct. 1148, 1154 n. 5, 71 L.Ed.2d 265 (1982).[7]

It seems to me that in cases involving the question of *pro se* representation, the balance would often tip in favor of the governmental interests at stake. The federal judiciary has a strong interest in ensuring that its processes function efficiently and are not abused. We have in the past had to deal with *pro se* litigants who, for example, "continually made unwarranted personal attacks on the court and opposing counsel, repeatedly misled the court as to the state of the record, and raised frivolous motions and objections." *Buena Vista Distribution Co.*, 748 F.2d at 609. To prevent such abuses, a federal judge has inherent power to order the litigant to obtain counsel. *Cf. Herron v. Southern Pac. Co.*, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931) (federal judge has inherent power to govern and control the conduct of a trial). This power ultimately derives from article III: federal courts would be incapable of functioning were they not vested with the authority necessary to prevent abuse of their processes.

Accordingly, in a case such as the present one, it would seem to me that a court could constitutionally require the plaintiff to obtain counsel, provided the court considers and properly balances the various interests at stake and concludes that the plaintiff acting *pro se* would unduly disrupt the conduct of the litigation. Factors appropriate for consideration would include, for example, whether the plaintiff has complied with discovery orders and has shown a rudimentary understanding of pleading rules and court procedures.[8] Also appropriate for consideration

---

**7.** Of course, the litigant seeking access to court is not the only kind of litigant whose due process rights would be implicated by an order to obtain counsel. Due process would likewise be implicated where the litigant is a civil defendant. Due process requires that "[w]herever one

is assailed in his person or property, there he may defend." *Windsor v. McVeigh*, 93 U.S. (3 Otto) 274, 277, 23 L.Ed. 914 (1876).

**8.** An order requiring plaintiffs like the Reshards to obtain counsel will in many cases be tantamount to an order of dismissal. Under Fed.R.

would be whether the plaintiff can afford counsel. *Cf. Boddie,* 401 U.S. at 380, 91 S.Ct. at 787 ("[A] cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard."). Unless the court gives due consideration to these various factors, its order requiring the litigant to obtain counsel must be considered as entirely arbitrary and therefore a violation of due process. Because the district court in this case failed to make that inquiry, I would issue a writ ordering it to do so.

In light of the in banc court's disposition of this case, it is unlikely that we will ever have the opportunity to review this matter on appeal from a final judgment. Because the in banc court is split evenly, the district court's order requiring the Reshards to obtain counsel is affirmed by operation of law, without opinion. Thus, if the Reshards do not obtain counsel, the district court will enter an order of dismissal. It would be fruitless for the Reshards to appeal that order, because the law of the case—the in banc court's ruling today—holds that the Reshards have no right to proceed without counsel.

### III.

In summary, I believe that the case the Reshards seek to prosecute is their "own case[ ]" within the meaning of section 1654 and that they are therefore not precluded from proceeding *pro se.* Furthermore, assuming *arguendo* that the case is not the Reshards' "own case[ ]," I believe that the district court's mechanical ruling requiring them to obtain counsel is unconstitutional. For these reasons, I respectfully dissent.

EDMONDSON, Circuit Judge, dissenting:

I agree with most of Judge Tjoflat's opinion, although I see no need to address constitutional law questions to decide this case. Florida law provides that the Resh-

Civ.P. 11, dismissal as a sanction for litigation abuse is a severe santion that is warranted only as a last resort. *See, e.g., Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985). It would

ards are the only parties with legal capacity to prosecute this wrongful death claim. Therefore, this case is their "own" within the meaning of 28 U.S.C. sec. 1654. The Reshards should be allowed to proceed without a lawyer.

therefore be anomalous were the district court permitted to order the Reshards to obtain counsel without first considering their conduct in the litigation.